# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BRIAN GLENREGINALD M.[1],

　　　　　　　Plaintiff,

　　　v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[2]

　　　　　　　Defendant.

Case No. 2:25-cv-01910-PD

**MEMORANDUM OPINION AND ORDER VACATING AGENCY DECISION**

Plaintiff challenges the denial of his applications for Disability Insurance Benefits and Supplemental Security Income Benefits. For the reasons stated below, the decision of the Administrative Law Judge is vacated, and the Court remands this matter on an open record for further proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

[2] Pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, the current Commissioner of Social Security, is hereby substituted in as the Defendant. *See* 42 U.S.C. § 405(g).

## I.    Pertinent Procedural History and Disputed Issues

On November 17, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and Title XVI application for supplemental security income benefits alleging that he had been disabled since April 1, 2018.  Administrative Record ("AR") 18, 309-317.[3]  His applications were denied initially on October 11, 2022, and upon reconsideration on May 25, 2023.  AR 18, 196-209, 210-224.  He requested a hearing, which was held via online video on January 11, 2024, before an Administrative Law Judge ("ALJ").  AR 45-69.  Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert.  *Id*.  On April 10, 2024, the ALJ issued a decision that Plaintiff has not been under a disability as defined in the Social Security Act ("SSA") from April 1, 2018, through the date of decision.  AR 18-37.   On January 15, 2025, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  AR 1-7.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ found that Plaintiff meets the insured status requirements of the SSA through March 31, 2022 and has not engaged in substantial gainful activities since April 1, 2018, the alleged onset date.  AR 20 ¶¶ 1, 2.[4]  At step two, the ALJ found that Plaintiff

[3] The Administrative Record is CM/ECF Docket Numbers 10-1 through 10-13. Plaintiff's opening brief is at Docket Number 12, Defendant's Brief is at Docket Number 17, and Plaintiff's Reply Brief is at Docket Number 18.

[4] The ALJ noted that while Plaintiff's earnings record did not indicate any income since 2019 [AR 335-39], there is evidence of unreported work activity. [AR 20-21.]  At the hearing, Plaintiff testified that since his alleged disability onset date he has

has the following severe impairments: "lumbar and cervical spondylosis with radiculopathy; degenerative joint disease of the bilateral knees; iliotibial band syndrome and lateral patellar translation of the right knee; carpal tunnel syndrome of the right upper extremity, status-post right carpal tunnel release surgery; left shoulder partial rotator cuff and SLAP tear status post arthroscopy and repair; status-post COVID-19 infection with respiratory failure and asthma; hypertension; coronary artery disease; obesity; and alcohol use disorder (20 CFR 404.1520(c) and 416.920(c))." AR 21 ¶ 3. The ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities. AR 21.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). AR 24-25 ¶ 4.

Before proceeding to step four, the ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined by the regulations with the following limitations:

> except he can stand and/or walk 2 hours in an 8-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; can have occasional exposure to fumes, odors, dust, gases, and poor ventilation; frequently handle and finger with the right upper extremity; and frequently reach overhead with the left

---

engaged in significant work activity--working off and on as an Uber driver since December 2018 until the Sunday prior to the hearing. He testified that he worked approximately 30-42 hours per week and would earn between $800 and $1200 per week [AR 52-54]. Plaintiff consistently reported similar information to a psychiatrist in 2022 [AR 2688]. The ALJ stated however, absent additional information regarding income earned and hours worked, there is insufficient information to determine that this work was performed disqualifying substantial gainful activity. AR 21.

3

upper extremity.

AR 25 ¶ 5.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  AR 35 ¶ 6.

At step five, considering Plaintiff's age (36 years old on the alleged disability onset date), education, work experience, and RFC, the ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff can perform, in the occupations of "surveillance system monitor", "document preparer", and "escort vehicle." AR 35-36 ¶¶ 7-10. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the SSA, from April 1, 2018, through the date of the decision. AR 37 ¶ 11.

Plaintiff raises five issues: (1) Whether the ALJ failed to properly evaluate the treating medical source opinions of Stephen Greene, M.D., Pamela Law, M.D., and Kayvon Yadidi, D.O.;  (2) Whether the ALJ failed to properly evaluate the treating medical source opinion of Orthopedic Surgeon Kevin Pelton, M.D. ; (3) Whether the ALJ failed to properly evaluate the examining medical source opinion of Mark Newman, M.D.; (4) Whether the ALJ failed to properly evaluate the treating medical source opinion of Natalie Hammond, Physician Assistant-Certified; and (5) Whether the ALJ failed to properly evaluate the treating medical source opinion of Neurologist Mohsen Hamza, M.D.  Dkt. No. 12 at 5-6.

## II.    Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted).  "Substantial evidence means

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[5]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III.   Discussion
### A.   The ALJ Failed to Properly Evaluate the Medical Opinions

#### 1.   Applicable Law

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination

---

[5] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians.  20 C.F.R. § 404.1545.  It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford*, 950 F.3d at 1149.  Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan*, 528 F.3d at 1198.

The ALJ, not the claimant's physician, "is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In rendering the RFC, the ALJ "must articulate a 'substantive basis for rejecting a medical opinion or crediting one medical opinion over another.'"  *Sandra B. v. Kijakazi*, 2022 WL 2651981, at *2 (C.D. Cal. Jul. 8, 2022) (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)).

For claims filed on or after March 27, 2017, the Social Security Administration's new regulations, which alter the framework for how an ALJ must evaluate medical evidence, apply.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819, at 5844-45 (Jan. 18, 2017); *Loriel C. v. Saul*, 2020 WL 4340742, at *11 (E.D. Wash. July 28, 2020).  ALJs are now required to articulate "how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings."  20 C.F.R. §§ 404.1520c(a), (b).

The factors for considering persuasiveness include supportability, consistency, relationship with claimant (e.g. length of the treatment relationship, frequency of examinations, etc.), specialization, and other factors that tend to support or contradict a medical opinion.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5).  While all factors should be considered, the ALJ must articulate how he or she considered the factors of supportability and

consistency.  *See* 20 C.F.R. § 404.1520c(b)(2); *Buethe v. Comm'r of Soc. Sec.*, 2021 WL 1966202, at *3-4 (E.D. Cal. May 17, 2021) (explaining that while an ALJ is required to consider all factors, the ALJ must at least explain how she considered the supportability and consistency factors because they are the most important).

The ALJ "must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free from legal error." *Robert D. v. Kijakazi*, 2021 WL 5905734, at *4 (S.D. Cal. Dec. 14, 2021).  "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding is." *Christopher F. v. Comm'r of Soc. Sec.*, 2020 WL 7022484, at *2 (W.D. Wash. Nov. 30, 2020) (quoting 20 C.F.R. §§ 404.1520c(C)(1)-(2)).  Under the new regulations, an ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

An RFC is defective if it fails to take a plaintiff's limitations into account.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  However, "there is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018); *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."); *see also Foster v. Kijakazi*, 2022 WL 3230472, at *2 (9th Cir. 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal quotation marks, and alterations

omitted).  Finally, it is well established that RFC determinations are legal decisions, not medical opinions.  *Valerie C. v. Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

### 2.    Analysis

Plaintiff argues that the ALJ failed to adequately articulate the factors of supportability and consistency in evaluating the medical opinions. Specifically, Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of Dr. Stephen Greene, Dr. Pamela Law, Kayvon Yadidi, D.O., Dr. Kevin Pelton, Dr. Mark Newman, Physician's Assistant Natalie Hammond, and Dr. Mohsen Hamza.  Dkt. Nos. 12 at 5-28; 18 at 2-7.

### i.    Dr. Stephen Greene, Dr. Pamela Law and Dr. Kayvon Yadidi

In assessing the RFC, the ALJ found Plaintiff capable of performing a range of light work.  AR 25 ¶ 5.  With respect to the disputed issue, the RFC included the following limitations:  Plaintiff can stand and/or walk 2 hours in an 8-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; can have occasional exposure to fumes, odors, dusts, gases, and poor ventilation; frequently handle and finger with the right upper extremity; and frequently reach overhead with the left upper extremity.  *Id.*

In connection with Plaintiff's workers' compensation claim, Plaintiff saw Dr. Stephen Greene in March 2018 and reported that while he was working at Northrup Grumman on March 10, 2018, he stepped in a hole that was in the floor, and his leg went through the floor up to his right knee.  AR 891. Plaintiff also struck his left elbow and left thigh on the floor when he fell. AR 891.  Plaintiff went to the Antelope Valley Hospital emergency room where x-rays were taken and reported as negative for fracture of the left elbow and

negative for fracture of the right knee but there was a moderate effusion of the right knee. AR 891.

Dr. Greene examined Plaintiff and noted mild to moderate tenderness in his left elbow; abnormal gait; limited range of motion in his right knee; and decreased muscle strength. AR 750, 751, 875, 887, 888, 892, 894-895, 917, 924, 928, 933, 937, 942, 945-946. Dr. Greene opined that Plaintiff was only able to perform limited standing and walking; needed sitting work only; was not able to push, pull, or lift over 10 pounds; and needed to use elbow and knee support and a cane. AR 893, 896, 929, 938, 947. Dr. Greene imposed work restrictions for two weeks in March 2018. AR 893, 896, 929, 938, 947.

Dr. Pamela Law also treated Plaintiff in connection with his workers' compensation claim and noted on examination that Plaintiff had an antalgic gait, tenderness to palpation in his right knee, reduced range of motion and limited motor strength in his right knee and tenderness to palpation in his left elbow. AR 836, 847, 857, 865. Dr. Law limited Plaintiff to standing and walking "no more than 10 cumulative minutes per hour;" no bending, twisting, squatting, kneeling, or reaching overhead with the left shoulder; and no pushing, pulling, lifting or carrying more than five pounds. AR 838, 849, 850, 861, 869, 872. Dr. Law placed Plaintiff on modified duty for a one-month period between mid-April through mid-May 2018. AR 838, 849, 850, 861, 869, 872.

In April 2018, Dr. Kayvon Yadidi treated Plaintiff in connection with his workers' compensation claim and noted on examination that Plaintiff had an antalgic gait, swelling and tenderness in his right knee, and limited range of motion in his right knee. AR 840, 879. Dr. Yadidi imposed similar restrictions to Dr. Greene for a two-day period except he found that Plaintiff must use crutches and knee support. AR 840, 879. Dr. Yadadi opined that Plaintiff was limited to performing sitting work with no pushing, pulling, and

lifting of more than 10 pounds.  AR 840, 879.

The ALJ did not find Dr. Greene, Dr. Law and Dr. Yadadi's opinions persuasive.  AR 32-33.   The ALJ found them inconsistent with the evidence which noted that Plaintiff had "very high subjective complaints of pain," and that the diagnostic studies demonstrated no significant structural abnormality warranting further treatment.  AR 33 (citing AR 1020, 1044, 1059, 1064, 1190).   The ALJ found that while the doctors' opinions may be supported by their own treatment records at the time of the examination because of positive findings found on examination, the opinions also appeared to be partly based on Plaintiff's own subjective statements, which the ALJ found were not consistent with other objective findings, examinations, and diagnostic studies.  AR 33 (citing AR 1020, 1044, 1059, 1064, 1190).  The ALJ further noted that there is no evidence that Plaintiff's crutches or any other assistive device was actually medically necessary and appeared to be based on Plaintiff's own statements to the providers that it was needed.  AR 33.

As to the supportability factor, Plaintiff argues that the ALJ never considered the objective medical evidence or supporting explanations of Drs. Greene, Law, and Yadidi and, therefore, failed to properly evaluate their opinions.  Dkt. No. 12 at 8-13.  Specifically, Plaintiff asserts that during numerous examinations with Dr. Greene, Plaintiff's abnormal findings included mild to moderate tenderness in his left elbow; abnormal gait; limited range of motion in his right knee; and decreased muscle strength.  AR 750, 751, 875, 887, 888, 892, 894-895, 917, 924, 928, 933, 937, 942, 945-946. Likewise, on examinations with Dr. Law and Dr. Yadidi, Plaintiff had abnormal findings including an antalgic gait, tenderness to palpation in his right knee, reduced range of motion in his right knee, limited motor strength in his right knee, and tenderness to palpation in his left elbow.  AR 836, 840, 847, 857, 865, 879.

10

As to the consistency factor, Plaintiff argues that the ALJ pointed to four pages of diagnostic imaging studies that demonstrated no significant structural abnormality warranting further treatment [AR 33 (citing AR 1020, 1044, 1059)] and failed to address the evidence consistent with Drs. Greene, Law, and Yadidi's opinions.  Dkt. No. 12 at 10-12.  Contrary to the ALJ's findings, Plaintiff argues that the diagnostic imaging was consistent with Drs. Greene, Law, and Yadidi's opinions.  Dkt. No. 12 at 11.  For example, an MRI of Plaintiff's right knee showed "bone increased signal of anterior medial condyle to anterior tibial eminence that may be stress-related edema and contusion" and "possible partial tearing about the femoral attachment" [AR 920].  *Id.*  In addition, EMG and nerve testing in 2020 showed right median motor delay and left median sensory delay that were consistent with carpal tunnel entrapment neuropathy [AR 1158]; an MRI of Plaintiff's left shoulder showed extensive tearing of his superior labrum and subscapularis tendon [AR 3770]; and the record also showed abnormal neurological studies as late as 2023 [AR 3756].  Importantly, Plaintiff required surgery on his left shoulder in January 2024.  AR 3775-3778.

Likewise, the opinions of Drs. Greene, Law, and Yadidi were consistent with Plaintiff's ongoing abnormal examination results, which included tenderness in his right knee; limited range of motion in his right knee; limited range of motion in his cervical spine; limited range of motion in his thoracic spine; limited range of motion in his lumbar spine; slow gait; positive straight leg raising bilaterally; limited range of motion in his shoulders; antalgic gait; and muscle spasm.  AR 415, 485, 506, 518, 523, 528, 535, 589, 590, 591, 592, 697, 706, 794, 806, 819, 897, 899, 901, 959, 1993, 1994, 2394, 3762.

The Commissioner responds that Drs. Greene, Law, and Yadidi assessed short-term work restrictions that were among the "numerous" opinions connected to Plaintiff's "ongoing workers' compensation litigation."

11

Dkt. No. 17 at 10 (citing AR 32).   The Commissioner asserts that the ALJ explained that while the opinions were somewhat supported by their examinations "at the time", they were inconsistent with the longitudinal record which demonstrated Plaintiff was not so limited; and their opinions were partially supported by Plaintiff's "own subjective symptoms" which made them less persuasive.  *Id*. at 11.  The Commissioner argues that the ALJ noted that Drs. Greene, Law, and Yadidi's opinions were partially based on Plaintiff's self-reports and the ALJ explained his rationale that the opinions assessed extreme limitations that were belied by the objective findings and other evidence in the record. *Id*. at 11-12.

Plaintiff responds that the ALJ did not indicate that he found Drs. Greene, Law, and Yadidi's opinions less persuasive because they were "short-term." Dkt. No. 18 at 2-3.  Further, Plaintiff argues that these opinions remained probative and persuasive to the overall evaluation of Plaintiff's disability and aligned with Dr. Pelton, Plaintiff's treating physician, who similarly assessed significant work restrictions, including an ability to lift only 5 pounds and a restriction to sedentary work, through September 2019. *Id*. at 3 (citing AR 550, 555, 742, 769, 1465, 1570).  In addition, Plaintiff argues that the Commissioner fails to explain how the ALJ's findings regarding "inconsistent with the longitudinal record" and "partially" based on Plaintiff's reported symptoms pertain to the supportability factor. *Id*. at 3-4.

The ALJ was obligated to articulate the supportability and consistency factors in evaluating Drs. Greene, Law, and Yadidi's opinions.  The ALJ failed to do so.  The ALJ failed to properly consider the supportability factor and discuss the abnormal examination findings by Drs. Greene, Law, and Yadidi. While the ALJ found that Drs. Greene, Law, and Yadidi's opinions were "inconsistent with the evidence", this evaluation does not relate to the supportability factor.  Supportability involves the evaluation of a medical

12

source's opinion with the medical evidence and explanation referenced in support of that opinion. *See Woods*, 32 F.4th at 791-92. The ALJ did not address the medical evidence and supporting explanations provided by Drs. Greene, Law, and Yadidi.

Here, the ALJ failed to explain how Drs. Greene, Law, and Yadidi's opinions and limitations were belied by the objective findings and other evidence in the record. Further, the ALJ erred when he evaluated the opinions of Drs. Greene, Law, and Yadidi and ignored the fact that these three opinions were each consistent with one another---they all limited Plaintiff to a sitting job and limited his lifting to 10 pounds or less. Because the ALJ failed to consider how consistent each of these opinions were with each other, the ALJ failed to adequately consider the consistency factor. Additionally, the ALJ erred in evaluating the doctors' opinions together rather than considering them individually. The regulations require an ALJ to analyze medical opinions on a source-by-source basis. 20 C.F.R. § 404.1520c(b)(1). This means that the ALJ must offer a separate explanation for each medical source who provided opinions. Here though, the ALJ grouped them together.

In short, the ALJ did not properly articulate how he considered the supportability and consistency factors. Consequently, the ALJ did not provide an explanation supported by substantial evidence for finding Drs Greene, Law and Yadidi's opinions not persuasive.

### ii.    Dr. Mark Newman' Medical Opinion

On March 27, 2018, Mark Newman, M.D., examined Plaintiff in connection with his workers' compensation claim and noted Plaintiff had antalgic gait and reduced range of motion in his right knee. AR 883, 911. Dr. Newman opined that Plaintiff was limited to sitting work, with no pushing, pulling, and lifting of more than 10 pounds, and found that Plaintiff must use crutches and knee support. AR 884, 912.

Plaintiff argues that the ALJ failed to evaluate – or even discuss – Dr. Newman's medical opinion. Dkt. No. 12 at 19. Plaintiff argues that Dr. Newman's opinion was supported by his examination and consistent with the objective medical evidence and the other medical opinions, including Dr. Yadidi's opinion that indicated the same limitations. *Id*. at 20-21. The Commissioner disagrees and asserts that the ALJ properly evaluated Dr. Newman's opinion and reasonably rejected the extreme limitations he assessed. Dkt. No. 17 at 15. The Commissioner asserts that Dr. Newman was one of the "numerous" providers who assessed temporary work restrictions during Plaintiff's workers' compensation claim. *Id*. (citing AR 32). The Commissioner argues that Dr. Newman appeared to base his limitations on Plaintiff's subjective complaints rather than his own examination findings and that the ALJ substantively evaluated this opinion when discussing Dr. Yadidi's opinion, although the ALJ did not cite the exact pages of Dr. Newman's opinion or identify him by name. *Id*. at 16 (citing AR 33).

The Court notes that the ALJ briefly discussed Dr. Newman stating that during an examination he noted that Plaintiff "appears to be demonstrating gross embellishment and symptom magnification screaming out in pain with feather light touch to his medial lower knee without any other objective findings." AR 30-31 (citing AR 912). The ALJ, however, did not articulate the persuasiveness of Dr. Newman's opinion or discuss the supportability or consistency factors. Nor did the ALJ find that Dr. Newman based his limitations on Plaintiff's subjective complaints rather than his own examination findings. While regulatory provisions may absolve the ALJ from discussing a doctor's conclusion in the context of another disability program—such as workers' compensation—that a claimant is "disabled," those "regulations do not provide, that the ALJ may ignore medical opinions," especially where the doctor assessed functional limitations or where the

14

opinion contains significant and probative evidence. *See Pratt v. Comm'r of Soc. Sec.*, 2022 WL 51193, at *6, *12 (E.D. Cal. Jan. 5, 2022) (while decisions by other government agencies are not binding in social security cases, "even so . . . despite differences in analysis and terminology, the ALJ is still required to address findings rendered for purposes of a worker's compensation claims"); *Garmany v. O'Malley*, 2024 WL 3105824, at *5 (E.D. Cal. June 24, 2024) (remanding because the ALJ failed to consider the extent to which the medical source's objective medical evidence actually supported the opinion and noted "district courts in the Ninth Circuit have consistently found error when the ALJ fails to articulate how he considered both the consistency and supportability as required under the regulations and Ninth Circuit case law").

Here, Dr. Newman's opinion referencing Plaintiff's limitations and abilities was significant and probative evidence that the ALJ should have addressed, regardless of whether he was a workers' compensation doctor.  And because the ALJ did not address Dr. Newman's opinion, the Court cannot confidently conclude that the error was harmless.

### B.    Remaining Issues and Remedy

Plaintiff contends that the ALJ's decision is also erroneous because the ALJ failed to properly evaluate Dr. Kevin Pelton, PA Hammond, and Dr. Mohsen Hamza's medical opinions.  Dkt. Nos. 12 at 14-19, 21-27; 18 at 2-6. Because the Court concludes that this case be remanded on an open record, the Court declines to address Plaintiff's other claims of error.  *Google LLC v. Oracle America, Inc.*, 591 U.S. 1, 20 (2021) (appellate courts "should not answer more than is necessary to resolve the parties' dispute" on appeal); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("While Smith raises a number of issues on appeal, the court addresses only those relevant to its decision to remand the case to the agency[.]"); *Lambert*, 980 F.3d at 1278 ("We have no occasion to reach Lambert's other assignments of error, as the

record may change on remand.").

## IV.   Order

For all the reasons stated above, the ALJ's decision is vacated, and the case is remanded on an open record. A separate judgment will issue.

IT IS SO ORDERED.

Dated: March 31, 2026

*Patricia Donahue*

_____

Patricia Donahue
United States Magistrate Judge

16